Shippen, C. J.
The special verdict in this case finds facts very favourable to the cause of the plaintiff, absolutely precluding the idea of the defendants acting as the agents of the drawer of the note. They find, that the defendants became interested in the note, by having paid Thomas the full amount of it, and that the interest continued to the time of the sale to the plaintiff. They likewise find, that the name of the indorser was forged, and that the note was not what it was sold for to the plaintiff. It is no doubt usual and lawful to sell notes by delivery, -without an indorsement by the seller ; and in all suck *532 cases there is río responsibility on'the part of the seller. This want of responsibility however, from the nature of the transaction, is confined to the solvency of the parties, whose names appear on the paper; but being a representation, that such names were really the signatures of such parties, if it afterwards appears that representation was false, I can find no reason or law, that discharges the seller from being accountable for the misrepresentation, by refunding the money he has received. When paper money, or what were called bills of credit, were in circulation, if a counterfeit bill was passed by one person to another, although both were ignorant of its being a counterfeit, there never was a doubt, but that the payer was answerable over to the payee. So now in the case of bank notes payable to order, instead of bearer, if the name of the payee should be forged, and *the note on that account should be refused at the bank, [*533 can it be doubted, that he who passed it would be answerable to the receiver ?
We were put in mind of the case determined by this court, of Levy v. Bank of United States; but that case was determined upon very different principles. The bank there were bound to know the signature of the person, who appeared as the drawer of the check, and did actually accept and pay the draft, or what was the same thing, credited the holder in his bank book. My opinion is in favour of the plaintiff, on the special verdict.
Yeates, J.
The court in forming their judgment on this special verdict, are confined to the facts expressly found by the jury. No inference or implication of any material fact is allowable. 3 Burr. 1376.
The first question which presents itself is, whether the defendants are to be considered as principals or agents in this transaction ?
That the monies produced by the sale of the note have not been paid over by them to Joseph Thomas, is ascertained, because they have credited themselves therewith. It is true, they have charged him with a commission of $15, and a further sum of $10, or thereabouts, for discount, at the rate of one and an half per cent, per month, the same as they afterwards allowed to the plaintiff, and have deducted the same thereout. But notwithstanding this, they cannot possibly be viewed as mere agents or brokers; because, on the 19th July 1798, when they received the note, they paid and advanced to Thomas $2900; and it is found by the jury, that “they became interested in the “ said note, having so paid for it on the day they received it, “and continued their interest therein until the 23d July afore- “ said, when they sold the same to the plaintiff, and confirmed “ their interest by giving credit for the amount of sale, deducting their commissions and discount.”
If indeed, the defendants had acted in the mere capacity of *533 brokers, and paid over the money to their principal, they would not be responsible to the plaintiff. But it is evident, that they gave an anticipated credit to Thomas, and looked to the sale of the note, as the channel of reimbursement.
It has however been insisted, that admitting the defendants to be principals, they are not answerable over to the plaintiff, because the legal maxim caveat emptor applies. In support hereof, two cases have been adduced. One cited by the Lord Chancellor, in 3 Ves. jr. 235, where one had bought an estate, and was evicted of one moiety, on a clear defect of title, not guarded *against by covenant, no equity could be raised *534] in his behalf; and the other of Bree v. Holbech, Doug. 654, where an administrator with the will annexed, found a mortgage amongst his testator’s papers, and transferred it bona fide, as a marketable commodity, there could be no recovery against him, on the mortgage’s turning out to be forged, as it was incumbent on the assignee to look to the goodness of the mortgage, or guard himself by proper covenants. 1 Fonbla. 109, 110.
To this it is answered, that the rule of “ caveat emptor,” is very unconscientious, and is now exploded. 2 Woodes. 415. 3 Woodes. 199. When applied to a retention of the purchase money, according to the ludicrous remark of a late writer, the words may be translated, “the devil take the hindermost.” (Evan’s essays on money had and received, pa. 32.) But at most, it is applicable to the sales of real and not of personal property. One selling goods, undertakes that they are his own, and an implied warranty respecting the title of the vendor, is annexed to ev.ery such sale. 2 Bl. Com. 452. 3 Bl. Com. 164-5. Bree v. Holbech, which savours greatly of hardship, was determined oh the plea of the statute of limitations; and the replication did not suggest a fraud, which could take it out of the statute. But in the case of a mortgage, the estate is absolute at law, on default of payment; and on the death of the mortgagee, goes to his heir or devisee, though the money is payable to his personal representative. 1 Fonbla. 259. A mortgage conveys the legal interest in the lands in form, though it is only a security, and the mortgagee has but a chattel. Doug. 610, (632.) Indeed formerly, the mortgaged premises were deemed subject to the dower of the wife of the feoffee, and all other his real charges and incumbrances, Cro. Car. 191; though the rules of equity are changed at present in these particulars. 2 Freem. 43, 66, 71.
The law seems to be well settled, that where one having the possession of any personal chattel, sells it, his bare affirmation amounts to a warranty ; though it is otherwise, where the seller is out of possession, for there the rule “ caveat emptor" applies. And so it is, in the case of lands, whether the seller be in or out of possession. 1 Salk. 210. 1 Ld. Raym. 593. 1 Show. 68. Cro. Jac. 474.
It is worthy of observation, that in Crips v. Reade, 6 Term *534 Rep. 606, where one sold a leasehold estate from which the purchaser was evicted for want of title, but no assignment or other written conveyance was made, a recovery was had by the vendee of the purchase money. Lord KENYON there said, he did not wish to disturb the rule of “ caveat emptor,” adopted in Bree v. Holbech, and in other cases, where a regular conveyance was *made, to which other covenants were not added. But here, the leasehold passed by parol. This adjudication [*535 is bottomed clearly on the principle, that no engagement shall be implied, which is not expressed, where there is a formal contract. But “ where the whole passes by parol, and proceeds on “ a misapprehension of both parties, and the money is paid under “a mistake, an action for money had and’ received, will lie to “recover it back.” Ib. 607. The distinction appears founded on sound policy and good sense, and particularly so, as referable to lands, which are» permanent in their nature. The decision has considerable force in my mind.
In the conclusion of the argument, the defendant’s counsel did not deny, that whoever sold a chattel, of which they were in possession, warranted the title ; but they warmly contended, that this implied warranty was not applicable, either on principle or precedent, to mere choses in action, sold without any formal assignments, which were stii generis.
I shall proceed to consider their.arguments in detail, and the animadversions made thereon.
It was said for the defendants, that nothing was more common, than to offer notes with indorsements on them for sale, in market; and it never was supposed, that the seller was responsible, either for the solvency of the parties, or the genuineness of the instruments. No distinction can be shewn, that the vendor should be liable for the latter and not for the former. Even on the written assignment of a bond, the assignor is not answerable, if the money be not recovered. 1 Dall. 449. If the assignee buys a bond at 20 or 30 per cent, discount, he is out of the act of usury, because he runs the risque of forgery. Ib. 217. This evinces, that it is incumbent on him to inform himself, of the hand writings on the paper, as subscriptions; and the plaintiff’s means of information in this particular, were equal to those of the defendants. The only mercantile mode known, of warranting a bill of exchange or promissory note, is by indorsement. In the cases of bills payable to order, bought at a discount, the indorser is liable; but where they are payable to bearer, they pass by delivery, and it is an absolute purchase; and the person thus transferring, ceases to be a party to the bill or note. Lambert v. Pack, 1 Salk. 128, (7th Resol.) 1 Ld. Raym. 442. 12 Mod. 241. 3 Vin. 248, pl. 9. So a note may be warranted by special agreement without indorsement. 2 Ld. Raym. 753.
It is true, that Kyd, in his treatise on bills of exchange and promissory notes, in his 1 ed. pa. 60, says, that as between the transferrer and the person who receives the bill or note, there *535 may be a recovery back, if the money is not paid thereon, in an *action for money had and received. But in his 2d ed. *536] (pa. go) he asserts, that if the bill or note be discounted for the accommodation of the transferrer, then the transfer is a sale; and he who sells it, does not become a new security, and is not liable to refund the money, if the bill or note should not be paid. According to the civil law, the defendants are not liable. 1 Pothier on Sales 200-1. If the parties do not explain themselves, the seller is not answerable. 2 Poth. 75, § 2.
To this, it is answered on the part of the plaintiff, that though endorsed notes are marketable articles, yet it never has been considered here, that the seller of a note guaranteed the solidity of the maker or indorsers. His refusing his subscription thereto, is supposed to imply that he is not to be responsible, if the payment cannot be exacted. But an evident distinction exists, obvious to common sense, and the reason and understanding of all mankind, when one undertakes to transfer what does not exist, a note drawn by Thomas indorsed by Morton. It is analogous to the payment of a counterfeit bank note payable to bearer, or of a forged bill of credit, previous to the adoption of the present constitution of the United States, upon any contract; or it may more correctly be compared to the delivery of a bank post note payable to order, whereon, the signature of the original payee has been forged. In neither of these instances, can it be pretended, that such transfer would be sanctioned. Besides, in the case before the court, the defendants possessed sources of knowledge superior to the plaintiff. It is not found, that the plaintiff had any dealing with the drawer or indorser; but the defendants must necessarily have had transactions with Thomas, because on the credit of his note, they advanced him $2900.
It was also said for the defendants, that the holder of a bill may recover, though the payee was fictitious, where that fact was known to all the parties concerned in drawing the bill. 3 Term Rep. 174, 182. And between the plaintiff and the maker of the note, the former could certainly be entitled to recover against the latter. John Morton, though a person in existence, had no interest in the note, but his name was merely made use of; and this distinguishes it from Mead v. Young, 4 Term Rep. 28, where there being a real payee interested in the bill, and his name forged, it was held, that no property passed thereby.
The plaintiff answers, that this note is payable to order and not to bearer. He cannot use the name of Morton in the institution of a suit, unless authorized by him. He cannot deduce a title through him, Because his signature is forged. To a bill payable to order, the holder can have no title, unless the payee has actually expressed his order by indorsement. Kyd 134. A *transfer by indorsement, where that is necessary, can *537] only be made by him, who has a right to make it; and that is strictly only the payee or the person to whom he or his indorsees have transferred it, or some one claiming in the right *537 of these parties. Kyd 68. Bayl. 15. 1 Salk. 126. 3 Salk. 70. 1 Burr. 452. Doug. 633. But even admitting that verdict might be had against Thomas, the great objection remains, that no recurrence can be had to Morton, because his indorsement was forged.
It was insisted again by the defendants, that the jury having acquitted the defendants even of the appearance of improper conduct, an attempt was now made to throw the loss off one innocent man on another, which the law would not permit. Thus, money paid by the acceptor of a forged bill to a bona fide indorser, cannot be recovered back; 3 Burr. 1354. 1 Bla. Rep. 390. 4 Term Rep. 325, 335; and on this ground, was the case of Levy v. The Bank of the United States, determined in this court. So a payment to an executor under a forged will, is good against a subsequent administrator. 3 Term Rep. 127. And a payment under a forged bond or bill, is styled by Ashurst and Grose, Justices, a voluntary act. Ib. 229, 132. The holder of a bill selling it without indorsement, neither morality nor law will compel him to refund the money for which he has sold it, if he did not know at the time that it was not a good bill. Per Ld, Kenyon, 3 Term Rep. 759, Fenn v. Harrison. By refusing to indorse, the party refuses to pledge his credit for the validity of the bill. Espin. Rep. 447, Fidell v. Clarke. So a horse sold under a false pedigree, without a warranty, there can be no recovery back. Peake 123, Dunlop v. Waugh. Where an unsound horse has been sold for a sound price, without warranty, the plaintiff must lay in his declaration, that the defendant knew the horse to be unsound. Doug. 20. Indeed, the cases respecting soundness of price, more particularly refer to the article of horses. 2 Bla. Com. 455, Christian’s note 9. If the defendants have been negligent, in not making inquiry concerning the signature of Morton, the same laches may be imputed to the plaintiff, who kept the note for eight days. If the purchaser wants attention in those points, where attention could protect him from imposition, the rule of "caveat emptor,” will apply. 1 Fonbla. 371-2. The defendants have fairly paid the full value of the note to Thomas. The plaintiff has done no more to the defendants.
The parties being thus equally innocent and meritorious in the whole transaction, the court will not interpose between them. The rule of law will apply; “ in pari delicto, melior est “ conditio possidentis,” according to the cases Lowrey v. Bourdieu, *Doug. 451. Andre et al. v. Fletcher, 3 Term Rep. 266. Browning v. Morris, Cowp. 792, and Tomkyns v. Barnet, [*538 Skin. 411. A judgment for the plaintiff would materially affect the negotiability of notes, and open a door to litigation, by rescinding many contracts.
On the part of the plaintiff it was contended, that the authorities cited were not applicable. The acceptor of a bill is bound to know the hand writing of the drawer, and if he pays his *538 money on a forged bill, the fault is imputable to him. All the books were ransacked on this subject, in Levy v. Bank of United States, and the decision was grounded on that proposition. The payment to the executor of the forged will was held good, because the probate was had in a court of competent jurisdiction on the subject, which could not be disputed, and therefore was not like the payment under a forged bill or bond; for this was made under the authority of the probate and not of the will. The cases of Fenn v. Harrison, and Fidell v. Clarke, go on the grounds of the goodness and validity of the bills, as referable to the solidity and solvency of the parties, and not to the genuineness of the paper; and the evident distinction between genuine and spurious bills has been already noticed. In Dunlop v. Waugh, the horse was sold according to the pedigree, and the vendor expressly said, he knew nothing further of him, as the mark was out of his mouth. The form of a declaration on an implied warranty, where a sound price has been given for an unsound article, is the same as on an express warranty, to let in both proofs if necessary, and said to have been so practised for twenty years. A fair' price implies a warranty, and no one parts with his money without expecting a consideration. 2 Woodes. 415. Doug. 20. It is admitted that this principle comes most frequently into view in the sales of horses, on account of the impositions usually practised in such cases ; but it is a general rule, applicable to every species of personal property. If one receives money on a forged note unknowingly, he shall answer for the money; but if done knowingly, it is a publication of the forgery. 12 Mod. 494. It has been said, that this book is of no authority; but the doctrine is uncontradicted, and appears consonant to reason. The very shewing of the note here was a misrepresentation, though it is agreed to have been from misapprehension. The rule inficiri delicto is not referable to the plaintiff; it is chiefly confined to cases of illicit trade, and transactions running counter to the statute law and general national policy ; but we know of no instance, independent of these circumstances, where it has been applied to common sales of unprohibited marketable articles. It cannot be the fault; it was *the misfortune of the plaintiff, when he contracted for [*539 one thing to have received another. And it is apprehended, that a decision in favour of the plaintiff, so far from, injuring the negotiability of notes, would give them an increased circulation ; for the purchasers will be rendered secure, whether the change of the objects of sale be designed or accidental.
It was likewise insisted for the defendants, that the circumstances of the present case will not support an action for money had and received. Moses v. M'Farlane, 2 Burr. 1005, is not generally understood. There the indorsement was obtained by fraud, and no doubt existed on the true merits. Ib. 1010, 1012. Dutrecht v. Melchior, 2 Dall. 428, is imperfectly reported ; but if the vendor had sold only his interest in the land to the vendee *539 without artifice, it would seem there could be no recovery against him. With respect to the failure of the consideration after the agreement is executed, there are some cases in which relief may be had at law, but it is impracticable-to extract from the books any general rule on the subject. 1 Fonbla. 363. Nor can we reconcile the rule, that an action will lie on the failure of the consideration of the agreement, with the case cited in 3 Ves. jr. 235, or Bree v. Holbech in Doug. 654. The holder of a promissory note is not considered as the assignee of a payee, otherwise all negotiability would be destroyed. An acceptor who has paid a forged bill cannot recover it back. 3 Burr. 1354. 4 Term Rep. 335.
On the other side it was answered, that no case could be put more strong than the present, wherein the consideration of a contract failed. The books are full of authorities, to shew, that where money ought not to be retained, or where it had been paid by mistake, or through imposition, or where the consideration failed, it may be recovered back. Among others, see 2 Bla. Rep. 824. 4 Term Rep. 561. 6 Term Rep. 606. Bull. 127. 1 Espin. Rep. 150. 3 Bla. Com. 162. The foundation of the decisions in 3 Ves. jr. 235, and Doug. 654, have already been examined. Written transfers were made, which contained no covenants of warranty.
Lastly, it was alledged by the defendants’ counsel that this action was brought prematurely; and that previous thereto, there should have been a tender of the note to the defendants. The special verdict finds that the plaintiff shall restore the note. If a contract is to be rescinded, it must be done in a reasonable time. 1 Term Rep. 133. When an action is brought for money had and received, an immediate return of the article is necessary; but it is otherwise on an express warranty. 1 H. Bla. 19.
The plaintiff’s counsel observed hereto, that the opinion of the * court in 2 Burr, ion, fully justified the commencement of the suit, without making any tender. The agreement is disaffirmed ab initio, by bringing this species of action. In 1 Term Rep. 133, the contract was conditional, and the case in 1 H. Bla. 19, was on an express warranty.
The answers given by the plaintiff’s.counsel to the arguments adduced on the part of the defendants, are in general, satisfactory to my mind. The leading feature of the case, which early attracted my attention, during the argument, was, in the language of the special verdict, “ the note is proved not to be, what it was “ sold for by the defendants, who were interested therein.” I can truly say, with one of the defendants’ learned counsel, [Mr. Ingersoll,] that I do not fully see the distinction laid down by Kyd, in his 2d edit, between notes discounted for the accommodation of the transferer, and a general sale by delivery. The author has cited no resolution or dictum, to support this distinction ; nor can I find any, on a careful search. But if the ground of the difference may be supposed to be, that in the first *540 case, the note is discounted on the credit o.f the signatures, apparent on the face and back of the note, then the observation applies strongly against the defendants in the principal case, the plaintiff being presumed to have paid his money, in confidence of the truth and genuineness of those appearances.
I impute no criminality of the slightest shade to the defendants. But here the plaintiff has contracted for one'thing, and has received another. He may justly exclaim, “non hac in “fcedera. veni." It is the vital principle in contracts, that each party shall perform those things which he ought to do. Failing essentially herein, the other party is discharged. — The mere exhibition of the note for sale, amounts in my idea, to a representation of facts, which the sellers may be called upon to verify.
The case of Parkinson v. Lee, (2 East. 314,) determined in 1802, was cited on the first day of this term, by the defendants’ counsel, and much relied upon. There, hops were sold by the sample, for a fair, marketable price, having a latent defect, unknown to' the seller, and without fraud on his part, (who did not grow them,) and it was resolved, that the seller was not answerable on an implied warranty, though the hops turned out to be unmarketable. The grounds of adjudication were, that the goods were sold according to the usual mode of dealing, where the seller was not the grower of the hops. The buyer had an opportunity of judging by the sample, and if he doubted the goodness, he might secure himself by a warranty. The seller was not liable for a *latent defect, where there was no *541] fault, and no representation made by him, to induce the buyer to purchase the article.
I do not consider that case as analogous to the present. There was a sale by the samjDle, according to the common course of dealing, between the contracting parties. — -Here, as I have already observed, the offer of the note for sale was a virtual representation of the genuineness of the instrument; and the jury state expressly, that the “ note is not what the defendants sold it for.”
To make the two cases parallel, let us suppose the hops to have been sold ignorantly, and without fraud on the part of the vendor, for a fair price ; and that instead of really being hops, they were a different product of the earth, similar in appearance, but of inconsiderable or no real value, can we hesitate in saying, that the contract would be rescinded ? Would the seller under such circumstances, be allowed to retain the monies paid on the contract ?
If the doctrine of the defendants is sound, if it is the bounden duty of the buyer of a note by delivery alone, to look to the reality of the subscriptions, and to run the risque of forgeries, the consequence necessarily must be, that if he should purchase a note, whereon all the signatures, as well of the maker as in-dorsers, are forged, from one who is ignorant thereof, he shall *541 be bound to pay the stipulated price for the waste paper! A doctrine which I cannot bring myself to swallow! The misfortune of the seller ought not, in my opinion, to be visited on the buyer; for that would in truth, be throwing the loss off one innocent man on another!
When it is said by the late Chief Justice in Musgrave v. Gibbs, (1 Dall. 217,) that a person who fairly purchases a bond or note, at a discount however great, does not incur the dangers of usury, because he runs the risk of a forgery, I do not take the words to imply, that on such event happening, he may not recur to the seller. .Nor where it is said in Cummings v. Lynn, (Ib. 449,) that the assignor of a bond does not, under the covenant implied by the word “ assigned,” bind himself to be answerable for the recovery of the money, can it be inferred, if the bond should prove to be a forgery, that the assignor should retain the money, if received, or recover it from the assignee, if it remained unpaid, even though the assignor should be wholly ignorant of the foul fact! I should presume, that common sense and common honesty would revolt at either of the propositions. I conceive in the words of Lord Kenyon, (1 Espin. Rep. 448,) that the holder of a bill or note, who denies to indorse them, and *sells them by mere delivery, supposing them to be good, refuses to pledge his credit to their validity or sufficiency; [*542 and such I take to be the common understanding of all persons conversant in such transactions. But I also hold, that if such bill or note purports to bear the signature of certain persons, who are responsible therefor, or through whom the buyer must necessarily derive his title, and these signatures are afterwards falsified by the fact, whereby injury or damage arise to the purchaser, the seller becomes answerable therefor. A thing contracted for, and not delivered, will support an action for money had and received. 1 Stra. 407.
On these grounds therefore, I am of opinion that judgment should be entered on this special verdict for the plaintiff.
Smith, Justice.
My brother Yeates has gone so minutely into the reasonings of counsel on both sides of the question, and the several cases which were produced during the argument, in support of their different positions, that I am spared the necessity of considering the present subject in detail. I shall therefore content myself with briefly giving the grounds, on which I concur with the Chief Justice and him, in rendering judgment on this special verdict for the plaintiff.
The act of selling chattels is such an- affirmation of property, that on that circumstance alone, if the fact should turn out otherwise, the value can be recovered from the seller. 2 Dali. 91. It is constantly understood, that the vender of goods undertakes that the commodity which he sells, is his own. 3 Bla. Com. 164. 1 Fonbla. 109. And it was resolved in 1 Dall. 428, in the case of lands sold, that where no land of the description *542 contained in the deed could be found, an action would lie to recover back the consideration money.
Explained and distinguished in 12 S. & R. r8r.
Cited in 3 Rawle 44 in support of a proposition that in all sales of goods there is an implied warranty, that the article delivered shall correspond in specie with the commodity sold, unless there are facts and circumstances to show that the purchaser took upon himself the risk of determining not only the quality of th? article, but the kind he purchased,
Can there be any solid ground of distinction between the sale of goods of a tangible quality, and mere choses in action, where the vender undertakes to sell what is not his own ? I can see no distinction between them in this respect, either in sound law, or common sense, as applied to the common transactions between mankind. Here then the article sold was not the property of the defendants ; because when the indorser’s name was forged, no property was transferred thereby to the indorsee. 4 T. R. 28. The note “ is not what the defendants sold it for," and therefore the mofiey was paid by mistake, and the consideration totally failed. And this brings it within the case of Moses v. M'Farlane, 2 Burr. 1012. In 1 Stra. 407, one paid money on a contract for the old stock of a company, and the party gave him so many shares in the additional stock. It was *held that an action for money had and received will lay, *543] because the thing contracted for was not delivered; but it would have been otherwise, if the thing contracted for, had been delivered, though to a less value.
The defendants moreover can have recourse to Thomas to whom they paid the money, but the plaintiff cannot; and in my idea a recovery will tend to prevent similar frauds and promote the circulation of promissory notes.
Brackenridge, Justice.
I made up my mind to my satisfaction at the time of the argument, conceiving that from the time I should be on the bench, and that which would be taken up eundo &t redeündo, I should not have an opportunity, or find it convenient to look into the books, or examine it further. It was in favour of the plaintiff on three grounds.
1. The name of the indorser Morton is a forgery, and the defendants had nothing to dispose of; no interest, no property. They sold what was nothing.
2d. The plaintiff cannot recover against Thomas, but the defendants may.
3d, It was incumbent on the defendants, and not on the plaintiff to make inquiry after Morton.
Judgment pro quer. per totam atriam.
A writ of error was afterwards brought to the High Court of Errors and Appeals, and the judgment reversed on a new”ground taken July 1807, that the suit was not maintainable by reason of the note not having been re-delivered, or tendered to the defendant, before bringing the action.
The opinion on the reversal is published in 30 Pa. 147 n.
Cited in 69 Pa. 253 to show that wherever one of the parties to a contract has the right to rescind it, and elects to do so, before commencing his action to recover back the money which he has paid, he must give notice to the vendor and offer to return the things sold.