## Stroh *against* Hess.

In an action of debt upon a written obligation in the name of the obligee for the use of another, where the defence made is that the obligation was paid to the obligee before his transfer of it to him for whose use the suit is brought, the obligee is not made a competent witness by the payment of all the costs which have and may accrue in the action.

A misapprehension by the court of the construction of an agreement by reason of which in their charge they mislead the jury, is good ground of reversal.

ERROR to the Common Pleas of *Lebanon* county.

This action by George Hess for the use of Levi Hess against William Stroh, was founded upon the following instrument:

"Whereas George Hess and William Stroh have had disputes concerning a claim which George Hess made on William Stroh for having become liable for a debt due to George Hess by Jacob Houk on an account assigned over to said George Hess by John Ley; Now know all men by these presents, that said parties have compromised and settled the same; and it is hereby agreed, in consideration of the same, that the said William Stroh shall pay to George Hess, the sum of two hundred and thirty-five dollars on or before the first day of December 1836. The above is independent of the amount said George Hess has already received from the son of said Houk; and said William Stroh hereby binds himself, his heirs, executors and administrators, to the payment of the said sum of two hundred and thirty-five dollars to the said George Hess on or before the first day of December 1836. Witness our hands and seals, October 4th 1836.

"WILLIAM STROH.     [SEAL].

"GEORGE HESS."     [SEAL].

The defendant gave the following evidence:

Jacob Houk·sworn. John Ley had appointed assignees, and in a month or two after I appointed assignees too. Ley's assignees and my assignees came several times together to settle. Then they made a contract, George Hess and Peter Houk. If Peter would pay him they would drop $20 of the amount. That hung from time to time, and so it does yet. I had a debt of $170, and more, against William Stroh. Peter Houk left this place. George Hess came to my house and was plaguing me that I owed. I owed him a small note for meat, and if he would gain that action he would take out that note and give it to me, the balance; it was six or seven dollars, and that was the suit which Hess had on the $170 claim assigned over to him against Stroh. Hess recovered

a judgment against Stroh for $140. Stroh dropped some. That hung four or five months, then my wife wanted some money, and I told her to go to Hess; she sent to Hess, and the boy, and he gave her $2 or $3. Four months after that then Hess would not give any, and I went down to him myself, and told him I wanted the money, and to see that note. He said I owed him something. Hess wanted to be paid for the small note for meat. I told him I wanted the balance of the note. He sued me, and I paid the note.

Hess said I owed John Ley something. He said he was satisfied, and had no claim against me. He settled with Peter Houk. Hess was one of John Ley's assignees. They could not agree, and they settled. I was in the side room, and they would not let me in the room. I was in the room when they settled. They appointed Henry Grow to settle. Peter is in the State of New York, has been gone four years. This was after Hess had brought the suit against Stroh. Hess said he had no demand against me, he was fully satisfied.

Cross examined.—This settlement was where Henry Zimmerman now lives. I heard them talking of a settlement. This was before the action was gained in court. It was two or three years before that. He did not say who had satisfied him.

John Spangler sworn. Peter Houk was living with me. When Peter went off, Hess came to my house for Peter's book, the chest and papers of Peter Houk. I said I would not give them up. He said he must have them about the action of Stroh and Houk, and of that $170 there would be a balance of about $50 coming out. Did not say which way it would be. He got the chest and papers. I have not seen Peter Houk since.

Cross-examined.—This was in 1835.

| | |
|---|---|
| Peter Houk, for the use of George Hess, *v.* William Stroh. | No. 71, April Term 1834—January 12th 1836, judgment for $141.04. 5th February 1836, debt and costs paid. |

Deed of assignment. Jacob Houk to Peter Houk and George Eckert, 19th of January 1833.

Inventory filed, 21st of January, 1833, vendue paper.

George Hess. (Called by plaintiff.)

To this witness the counsel for the defendant objected on the ground of incompetency, that he is interested.

It appearing to the court that the witness has assigned all his interest in the suit to Levi Hess, and that the suit was brought for his use, and all the costs are paid into court, and a sum of money deposited in court sufficient to cover those that may accrue; the court overruled the objection, and admitted the witness, on the ground that from the facts now before the court, judging from the evidence as it appears to them, this case is not brought within the

rule laid down in *Stecker* v. *Shimer*, (5 *Whart.* 452) and there is nothing to show that he would be liable over to Levi Hess. No notice of special matter showing the grounds of defence, the court decided from the record. The counsel for the defendant excepted to the opinion of the court.

Witness examined on his *voir dire*. I have no interest in the result of this suit; I assigned this agreement to pay a debt I owed my son; I was indebted to him. The counsel for the defendant still objected to the witness. The court overruled the objection, and directed the witness to be sworn. The counsel for the defendant excepted to the opinion of the court.

George Hess. (Sworn in chief.)

I never received a cent from Stroh. Houk never paid me. No money has been paid on this bond. It was given for a debt Houk owed me, about $307, and Stroh went bail for him. I demanded the money from him a number of times, and he did not like to pay it, and then he agreed to give me this for $235. Stroh never paid me the debt as assignee of Ley's estate. Houk never paid to me the debt for Ley's estate, he assigned the debt due to me from Stroh, before Ley assigned to me. The debt due from Houk was never paid to me.

The court thus charged the jury :

This is an action on an instrument under seal, given by defendant to the plaintiff, George Hess, which has been by him assigned to Levi Hess. The agreement purports to be given on a compromise of a claim which was due from Jacob Houk to George Hess, and also a debt due by said Houk to John Ley, which claim had been assigned by Ley to Hess as his assignee, under a voluntary assignment.

This is an instrument under seal, given on a compromise of both parties. It imports validity on its face and a consideration, being under seal, and binds all parties, and at law the plaintiff would be entitled to recover. ·

The defendant alleges that there was no consideration, and that in equity he ought not to pay the debt. The court instruct you that the defendant is bound to pay this money unless he has shown to your satisfaction, that there was fraud in the procuring the bond or agreement, or a mistake in the settlement, or that the consideration has failed. Fraud must not be presumed, it must be clearly established by evidence ; and we submit it to you to decide whether there was any fraud practised upon Stroh by Hess in procuring the agreement. Was he deceived ? Has he in any way been imposed upon ? Did he not know all the facts ? Is there any evidence that he did not owe a debt to Jacob Houk, does not owe this money, or did he not owe it originally to Jacob Houk ? The court have seen none, nor is there any contained in the agreement. But it is alleged that Jacob Houk did not owe George Hess any thing. But it must be borne in mind, that the agreement under seal which is the plaintiff's claim, was not only for

I. — N *

George Hess, but for one due to John Ley from Houk, and which was assigned to Hess. Jacob Houk has been examined as a witness, he swears that John Ley had appointed assignees and so had he, that Hess was Ley's assignee, his brother Peter was the assignee of himself. He says these assignees met several times together to settle, that they made a contract, that if Peter Houk, the assignee of Jacob, would pay him, he would drop $20; he says so it hung from that time to this, and does yet. Now, what portion of this settlement and agreement was made up of the debt due from Ley's estate does not appear. Now, supposing that there was nothing due to Hess in his own right, as has been contended, still there is nothing to show but Houk was honestly indebted to John Ley, and how much does not appear from the defendant's showing, for aught we know the amount of the agreement, the $235. Would it under such circumstances be right or proper for a court or jury to set aside a solemn agreement of the parties made on a compromise of all these conflicting claims, on such evidence as is before you? When a party alleges a mistake in a settlement, he ought to point out the mistake by very clear and explicit proof, and that one party has been imposed upon, who is called upon to pay the money. Contracts of this kind ought to be treated as of some validity; their agreement is the law of the case. Would the parties make a settlement of this kind without a full knowledge of the facts? It is not pretended that any fraud has been practised on Stroh, the defendant, but if any injustice has been done it is to Jacob Houk; and if Hess, as the assignee of Houk of this debt due him from Stroh, should collect or receive more money than was due him from Houk, he would be responsible over to the assignor, and Hess would hold it as his trustee. Houk swears that Stroh was indebted to him, and the claim was assigned to Hess.

What injustice is there, then, in his paying his debt, for which he admits himself to be liable? But what evidence is there that George Hess, when this agreement was made, or since, ever had been paid his debt?—all there is, comes from Jacob Houk. (I will read you from my notes his testimony.) He says Hess told him he owed him nothing, except a note of six or seven dollars for a meat bill, and for that he sued him, and got a judgment. Hess said he was satisfied. When this conversation took place, does not appear; if it was after he had taken this agreement (and it would be fair to presume it was) then all would be correct, because in this agreement it is admitted Hess had received some money, and this $235 was to be paid him, besides what he had already received. He also says that Hess told him, at the time of this conversation, that he owed Ley's estate. He also says that Peter Houk, his assignee, and Hess had a settlement. They appointed Henry Grow to settle; that he was in a side-room at the tavern, and heard it. Does he swear that the debt was paid?

[Stroh v. Hess.]

Does he tell how it was paid? he certainly does not. Now, a settlement only fixes the amount due, and that is one thing, but a payment is another, and the material one to show here. If Hess was paid, how was the payment made? you must have evidence, before you can decide that this defendant is not liable. If a party alleges a payment, he must show it, the time when, and the amount paid. No amount has been mentioned except the $141, on a judgment against Stroh, which was before this agreement, and it would be fair to infer that the parties referred to that in the agreement on which suit is brought; it was made on the 6th of February 1836, and agreement bears date the 4th day of October 1836.

Mere vague declarations, and unexplained conversations should never destroy the form and effect of a written agreement under seal. A jury have a right to require some proof.

I have a great aversion to disturbing settlements made between parties, and reduced to writing by them, without clear proof of a mistake. Jurors should be cautious in setting them aside, five years after they were made, and no objection heard till the party is called upon to pay the money. It would be a disgrace to the administration of justice to suffer it to be done, unless in clear case of fraud or mistake. The burden of proof is cast upon the defendant to show it. Has he done it here? Are the accounts or the papers shown here? Hess swears his debt against Stroh was more than $300—all he received was $141. The expenses of that suit had to be paid out of it. If you believe him, there is no doubt but that the debt is due. Why did not the defendant require the production of his books, and the accounts of Ley, so that the jury could look over the figures, and see the errors?

The counsel for the defendant have told you, that this agreement was drawn by a respectable member of the bar. You can draw your own inferences from that. Would he have written this agreement if the parties were not all satisfied, and told him so, and how to draw their settlement? All these are facts worthy of your consideration. If you are satified that there was no fraud or mistake in this settlement, then, under the law of the land, the plaintiff would be entitled to your verdict for the amount of the debt and interest.

Assignment of errors:

1. The court below erred in admitting George Hess a witness for plaintiff.

2. The court below erred in their charge to the jury, and particularly, in telling them that the instrument on which suit was brought, purported to be given on a compromise of a claim which was due from Jacob Houk to George Hess, and also a debt due by said Houk to John Ley, which claim had been assigned by Ley to Hess, as his assignee, under a voluntary assignment; and in instructing the jury throughout, that two claims were em-

[Stroh v. Hess.]

braced in said agreement; also in instructing the jury as follows: "If a party alleges a payment, he must show it, the time when, and the amount paid."

*L. Kline* and *Pearson*, for plaintiff in error.

In an assignment of a bond, although there be no express guaranty, yet there is an implied one that the debt is due; the allegation was, and proof was given to support it, that the debt had been paid to the witness before he assigned the obligation. If this were established, he would have been liable over to the assignee, and he was therefore interested. 9 *Serg. & Rawle* 21; 5 *Watts* 418; 5 *Whart.* 446, 458.

*Breitenbach,* for defendant in error.

It did not enter into the contract of assignment of the chose in action, that there should be any guaranty, and therefore the witness was not interested. 2 *Penn. Black.* 208, 307; *Peake's Ev.* 157; 12 *Serg. & Rawle* 181.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is an exception to the opinion of the court, admitting George Hess, the plaintiff on record in the court below, and the obligee in the writing obligatory, on which the action is founded, to testify on behalf of his son Levi Hess, for whose use the action is stated to have been commenced. The defence set up was a want of consideration in giving the writing obligatory; that George Hess, the obligee named therein, had actually received the debt for which it was given, previously from the principal debtor, but concealing this fact from the defendant below, and indeed going further, by representing that the debt still remained unpaid; and the defendant below having made himself liable for the payment of it as surety for the principal debtor; the plaintiff below thus induced the defendant below to give him the obligation in question. The counsel for the plaintiff, after that the defendant below had given some evidence, tending in a slight degree to prove the fact upon which the defendant rested his defence, offered George Hess as a witness, to repel and disprove the evidence so given by the defendant. The defendant's counsel, however, objected to the competency of Hess, to prove what he was offered for, on the ground of interest. It was then shown that George Hess had assigned all his right and interest to and in the writing obligatory, in suit, to Levi Hess, in satisfaction of a debt which he owed him; that this action was therefore brought for the use of the said Levi Hess, as stated on the record; that all the costs which had accrued were paid into court, and a further sum of money deposited there, sufficient to cover all that should accrue. The plaintiff having shown this, alleged that George Hess could have no interest in the result of

[Stroh v. Hess.]

the suit, and ought for that reason to be admitted to give evidence. But the defendant still objected to his competency. The court, however, considered him a competent witness, and accordingly overruled the objection; whereupon, the defendant excepted to the opinion of the court in this behalf. Now, in order to decide whether the opinion of the court was correct or not, it is necessary to examine first, and see what would have been the effect produced upon the liability of George Hess to Levi Hess, by a verdict and judgment having been passed in this action in favour of the defendant below, on the ground that George Hess had, before obtaining the obligation in suit, received payment in full of the debt for which it was given, from the real debtor, and that he prevailed upon the defendant, who was bound as a surety for the payment of it, but ignorant of the payment by his principal, to give him the obligation in suit, by claiming the debt as unpaid and still due to him. If this were made to appear to the satisfaction of a jury, it would clearly be such a fraud practised by George Hess upon the defendant as would avoid the obligation, and render it no better than a counterfeit. But every obligee, or holder of an obligation, who assigns it to another, especially if he does so for a valuable consideration, impliedly at least, thereby engages that it is genuine and binding upon the obligor, unless he discloses fully and truly to the assignee, in treating for the assignment, all the facts and circumstances connected with the execution and delivery of the obligation, and, after being thus advised, the assignee agrees to take it at his own risk. Hence, George Hess would have been liable, upon such implied engagement, to have paid to Levi Hess, the amount of the obligation in suit here, if the defendant had succeeded in making the defence which he set up, good before the jury. But George Hess was admitted as a witness, to give evidence for the very purpose of preventing this result; and, consequently, to prevent his becoming liable to Levi Hess for the payment of the obligation, upon his implied warranty or engagement, arising from the assignment, that it was a valid and binding obligation. Thus it appears that he was interested in the event of the suit, and that his interest was in favour of a recovery being had by the plaintiff, and therefore was an incompetent witness for him; so that the court below erred in admitting him to testify as such.

The second error, which is the only remaining one, is an exception to the first part of the charge of the court to the jury; in which the court state, that "the agreement (meaning that upon which the plaintiff's claim is founded) purports to be given on a compromise of a claim, which was due from Jacob Houk to George Hess, and also a debt due by said Houk to John Ley, which claim had been assigned by Ley to Hess, as his assignee, under a voluntary assignment." It is very obvious, that the court fell here into an error, in construing the agreement. They

I. — 20

considered it a compromise of *two* distinct claims: the first, as they say, due from Jacob Houk to George Hess, and the second due from said Houk to John Ley, which had been assigned by Ley to George Hess. Now, the agreement speaks of but one claim, which was an account that John Ley originally had against Jacob Houk, and assigned to George Hess, for the payment whereof William Stroh had, in some way, made himself liable to George Hess. This, the agreement expressly declares, was the subject of dispute between the parties to it, and that the agreement was made for the purpose of compromising and settling the dispute concerning this claim, without making the least mention of any other. The idea of there having been *two separate* claims compromised and settled by the agreement, is carried by the court throughout their charge to the jury. And under this erroneous impression of the import of the agreement, the court, among other things, instruct the jury, that although Houk has paid George Hess all that he owed directly to him, yet the second claim which George Hess had, as assignee of John Ley, against Houk, may have remained unpaid, and have amounted to the $235, the amount for which the obligation in suit was given. This instruction was certainly calculated to mislead the jury, because, according to the tenor of the agreement, the only claim which George Hess had against Houk, was that which had been assigned to him by Ley; so that if Houk paid off any claim, coming from him to George Hess, it ought to have been taken that it was that claim, unless other evidence had been given, showing clearly that Hess had a second or different claim against Houk, to which the evidence of payment was applicable.

Judgment reversed, and a *venire de novo* awarded.