## Flynn *versus* Allen.

1. The doctrine that the vendor of chattels impliedly warrants the title extends to choses in action.

2. As in other articles, the vendor does not undertake that they are really worth what they represent, but that they are what they purport to be. He warrants the genuineness of the claim upon them.

3. Every assignor of an obligation engages that it is genuine and binding on the obligor, unless he discloses to the assignee all the facts and circumstances connected with its execution and delivery; and after being thus advised, the assignee agrees to take it at his own risk.

4. If the assignee cannot recover from the obligor by reason of failure of consideration before the assignment, he may recover from the assignor, whether he hold his guaranty or not.

5. The assignment is a warranty of title, broken as soon as made, if the security be not valid in point of fact; the assignee need not wait till it is due nor tender a return of the security before bringing suit.

March 23d 1868. Before STRONG, READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Potter county:* No. 456, to January Term 1868.

This was an action of assumpsit, brought November 2d 1865, by J. W. Allen against M. J. Flynn, to recover the price of two bonds, issued by the township of Jackson to Flynn, and sold by him to Allen, which Allen alleged were not binding on the township, and were therefore of no value.

According to the testimony of J. M. Kilbourn, provost-marshal, Flynn was drafted for the service of the United States on the 23d of February 1865; he reported about the 14th of March, was held to service, and furloughed until April 14th. He was not mustered into service; nor did he put in a substitute. All men not mustered into service were discharged in April, by orders from the War Department.

On the 15th of March 1865 an Act of Assembly was passed (Pamph. L. 24), authorizing the authorities of townships, &c., to raise a sufficient sum to pay a bounty of $400 to each volunteer who was then or might thereafter be enlisted, with the proviso, that they might pay the bounty "to any person drafted into the service and serving therein, or to their families, or to any person

[Flynn v. Allen.]

furnishing a substitute, &c. Flynn was a member of the school board of Jackson township, and after he had been drafted, the board, upon Flynn agreeing to put a substitute into the service, issued to him two bonds in the following form:—

"The township of Jackson, in Potter county, Pennsylvania, in her corporate capacity, acknowledges to owe and be indebted to M. J. Flynn or bearer, in the sum of $100, to be paid to him or bearer in one year from date, with lawful interest, to which payment well and truly to be made the credit and property of the said township is hereby pledged, as authorized by Acts of Assembly heretofore approved. Witness our hands and seals this 23d day of March, A. D. 1865."

The other bond was for $62.50.

At the issuing of the bonds, Flynn agreed to return them if he did not put a man into the service.

Allen shortly afterwards purchased the bonds from Flynn at a discount of 20 per cent. The payment of the bonds was refused to Allen by the authorities of the township, and after notice to Flynn of the refusal this suit was brought.

The declaration in the first count, alleging the sale of the bonds, with a promise that they were for a good consideration and were binding on the township, averred that they were not valid, but were issued without authority; that the plaintiff had offered to return them to the defendant on being repaid the money, &c. The second count averred, that the defendant guarantied and warranted that the bonds were for a good consideration and were binding on the township; with no averment of an offer to return them: also the common counts.

The plaintiff asked the court to charge:—"That the drafts constituting the foundation of the plaintiff's action are without consideration, and not binding upon the township of Jackson, and that therefore the plaintiff is entitled to recover in this action."

This the court affirmed.

The defendant submitted a number of points to the court, which with their answers are as follows:—

1. If the bonds in controversy were drawn as they purport to be, by the school directors of Jackson township, and were sold by defendant to plaintiff without any express guaranty or fraud, being bonds of a corporation, there was no implied guaranty that they were legal or given for a valuable consideration.

Answer: "These bonds purport to be the bonds of Jackson township, and to be the legal, valid obligations of the township to pay. The defendant, when he offered them for sale as such, impliedly undertook or warranted that they were what they purported to be, viz., the bonds of Jackson township legally executed. This undertaking is not satisfied by proof of the genuineness of

[Flynn *v.* Allen.]

the signatures of the officers; for if the officers had no legal right to execute the paper, and could impose no liability on the township, then the bonds are not what they purport to be—they are not the bonds of Jackson township."

2. If there was no fraud or express guaranty by Flynn, the plaintiff took them subject to all the equities between the original parties to the bonds, and was bound to inquire before purchasing of the proper authorities of the township as to their validity.

Answer: "The plaintiff did not take these bonds subject to the defence set up; but the duty of inquiry did not relieve the defendant from the implied warranty, which we have said existed."

3. The bonds in controversy having been drawn subject to the Act of March 15th 1865, and after Flynn was drafted and mustered into service, were in pursuance of law, and valid. And the fact that other bonds had been issued before the act, and without authority of law, cannot affect the validity of those drawn subject to said act; there being no evidence that the prior bonds were paid by the township or used by the defendant.

Answer: "The township of Jackson could have contracted to pay a bounty, and could have paid it to a volunteer or drafted man actually entering the service; but they could not draw their bonds to a drafted man in advance of his entering the service, and when he distinctly declared that he would not go into the service, to enable him to go in search of a substitute, as was done in this case. The defendant was drafted in February; he reported in March; was examined and held to service, furloughed, and before he again reported in person or by substitute, the war closed, and by general order drafted men were excused from again reporting. He was never mustered into the service. He never furnished a substitute. No service was ever rendered, or consideration existed growing out of the fact that the defendant had been drafted, that authorized the issuing of these bonds or any of them."

4. There can be no recovery in this case, without showing that the township had refused payment of the bonds given in evidence, as averred in declaration before the commencement of this suit.

5. No action can be sustained under the evidence in this case, which was commenced before the bonds became due.

6. The sale of these bonds being in pursuance of a direct authority given to Flynn by the school directors, was legal and valid.

The 4th, 5th and 6th points were refused.

There was a verdict for the plaintiff for $143.43.

The defendant took a writ of error, and assigned for error:—

1. The answer to the plaintiff's point.

[Flynn v. Allen.]

2. The answer to the defendant's 1st point.
3. The answer to his 2d point.
4. The answer to his 3d point.
5. The answer to his 4th point.
6. The answer to his 5th and 6th points.

*R. Brown*, for plaintiff in error, cited the Act of March 15th 1865, *supra*; Egan *v.* Call, 10 Casey 236; McFarland *v.* Newman, 9 Watts 55; Evans *v.* Dela, 11 Casey 451; Ritchie *v.* Summers, 3 Yeates 351.

*A. G. Olmstead*, for defendant in error, cited Act of 1865, *supra*; Debolt *v.* Dunkard School Dist., 3 P. F. Smith 214; Swanzey *v.* Parker, 14 Wright 441; Coolidge *v.* Brigham, 1 Met. 547; 5 Id. 68; Story on Cont., § 411; Stroh *v.* Hess, 1 W. & S. 153; Frantz *v.* Brown, 1 Penna. R. 257; Kauffelt *v.* Leber, 9 W. & S. 93; Boyd *v.* Bopst, 2 Dallas 91; Dorsey *v.* Jackman, 1 S. & R. 48; Perley *v.* Balch, 23 Pick. 283; Borrekins *v.* Bevan, 3 Rawle 39; Christy *v.* Cummings, 3 McLean 386.

The opinion of the court was delivered, March 30th 1868, by

SHARSWOOD, J.—The doctrine that the vendor of chattels in possession impliedly warrants the title, extends to choses in action: Ritchie *v.* Summers, 3 Yeates 531; Charnley *v.* Dulles, 8 W. & S. 361; Swanzey *v.* Parker, 14 Wright 450. As in the sale of other things, he undertakes not for their quality, that they are really worth the money they represent, but that they are what they purport to be. In other words, he warrants the genuineness of the claim upon them: Lyons *v.* Divelbis, 10 Harris 185. Every obligee or holder of an obligation, who assigns it to another, especially if he does so for a valuable consideration, impliedly at least, thereby engages that it is genuine and binding upon the obligor, unless he discloses fully and truly to the assignee, in treating for the assignment, all the facts and circumstances connected with the execution and delivery of the obligation; and, after being thus advised, the assignee agrees to take it at his own risk: Stroh *v.* Hess, 1 W. & S. 153. If the assignee of a bond cannot recover it from the obligor by reason of the consideration of it having failed before the assignment of it was made, he may recover back from the assignor the money he paid for the assignment, whether he hold his guaranty or not: Kauffelt *v.* Leber, 9 W. & S. 93. Like other warranties of title, as of seisin or right to convey, it is broken as soon as it is made, if in point of fact it is not a valid security. The assignee need not wait until it is due before bringing suit. His right of action accrues immediately: Holden *v.* Taylor, Hob. 12; Bender *v.* Fromberger, 4 Dallas 438; Stewart *v.* West, 2 Harris 336. Nor is it necessary to

[*Flynn v. Allen.*]

tender a return of the security before the commencement of the
action: Ritchie *v.* Summers, 3 Yeates 531; Fielder *v.* Starkin,
1 H. Blacks. 19. This was a special action on the implied war-
ranty, and not for money had and received, founded on a rescis-
sion of the contract, in which the rule may be different. The
second count in the declaration sets forth the warranty without
any allegation of an offer to return the bonds to the defendant.
Indeed, though this point is presented in the printed argument
of the plaintiff, it does not appear to have been made in the court
below, nor is it contained in any of the errors assigned. These
principles dispose of the 2d, 3d and 5th assignments of error,
and so much of the 6th as relates to the refusal of the court to
charge as requested in the 6th point of the defendant below.

It remains to consider whether the obligations or bonds of the
school directors of Jackson district, of Potter county, which had
been sold and delivered by the plaintiff in error to the defendant,
were legal and valid securities, binding upon the school district,
by whose authorities they were executed. They were issued under
the Act of March 15th 1865, Pamph. L. 24, entitled "A further
supplement to an act relating to the payment of bounties to
volunteers," approved March 25th 1864. After enacting that
the authorities mentioned in the act to which it was a supplement
should have power "to raise a sufficient sum to pay a bounty to
each volunteer enlisted under the present call or who may
hereafter be enlisted under the pending or future calls, not
exceeding $400," it goes on to provide "that it shall and may
be lawful for the authorities to pay the amount of bounties herein
prescribed to any person drafted into the military service of the
United States and serving therein, or to the families of the same,
at such time and in such sums as the said authorities shall deem
proper; or to any person furnishing a substitute for said service,
who may be credited to the quota of any county, city, ward,
borough, township or enrolment district of this Commonwealth."
Flynn, the plaintiff in error, was drafted into the service of the
United States from the township of Jackson, in February 1865,
and the bonds in question were issued to him upon his agreement
to put a substitute into the service. In point of fact he never
did put in a substitute, and never was mustered into the service
himself. According to the testimony of Kilbourn, his own witness,
he reported to the deputy provost-marshal, was examined and held
to service and then furloughed. The war closed, and all drafted
men not mustered into service were discharged in April 1865, by
general orders from the War Department. The school directors
had no authority to pay money to any person on his mere agree-
ment to furnish a substitute, but only to a person actually fur-
nishing one. Even if they had, yet the consideration of these
bonds failed, by reason of his failure to perform his agreement,

[Flynn *v.* Allen.]

which would be equally effectual as a defence to the school district. So payment could not be made, nor, of course, bonds issued to a drafted man until actually mustered into service. The words of the statute are express and imperative, "drafted into the military service of the United States and serving therein." These considerations dispose of the 1st and 4th assignments of error.

As to the answer of the court to the plaintiff in error's 6th point, it is hardly necessary to say, on the view we have taken of the case, that the fact that the sale of these bonds was in pursuance of a direct authority given to him by the school directors, would not make them valid or give the defendant in error any better title than the plaintiff himself had.

Judgment affirmed.